UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TYLER ARCHON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | CIVIL ACTION |
| VERSUS | NO. 18-6854 |
| TAYLOR & TYLER INC., AND ERIC GUILLORY | SECTION "B"(5) |

ORDER AND REASONS

Before the Court is a motion filed by defendants Taylor & Tyler, Inc. and Eric Guillory to stay proceedings pending resolution of the Department of Labor's ("DOL") preexisting investigation. Rec. Doc. 19. Plaintiff filed an opposition. Rec. Doc. 25. Defendants then sought and were granted leave to file a reply memorandum. Rec. Doc. 26. For the reasons discussed below,

**IT IS ORDERED** that defendants' Motion to Stay (Rec. Doc. 19) is **DENIED,** but without prejudice to reurge if the DOL's investigation leads to a more active and burdensome stage upon movant, plaintiff, or for other detailed cause.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Tyler Archon filed a complaint on July 19, 2018 against Defendants Taylor & Tyler, Inc et al. for allegedly violating the Fair Labor Standards Act by failing to pay Archon and other putative class members overtime wages. Rec. Doc. 1. Defendant Eric Guillory is the sole owner of Taylor & Tyler, Inc., a company specializing in residential heating, ventilation, and

1

air conditioning installation. *See id.* at 2-3. Plaintiff Tyler Archon worked for Taylor & Tyler, Inc. from July 2017 until June 2018 as an air conditioning repair personnel. *Id* at ¶ 12, 31. Plaintiff claims that he represents a class of other employees of Taylor & Tyler, Inc. performing air conditioning repair work who were paid a salary and who worked over 40 hours in any workweek at any point in the past three years. *Id.* at ¶ 56. Defendants filed their answer on September 5, 2018 claiming that plaintiff was subject to a variable workweek contract as authorized by Section 7(f) of the Fair Labor Standards Act and properly paid all amounts he was owed. Rec. Doc. 18. Defendant Eric Guillory further argues that he did not personally employ defendant Tyler Archon and is therefore not responsible for personally paying his wages. *See id*. at 1.

Defendants filed the instant motion on September 5, 2018 to stay proceedings pending resolution of a preexisting investigation by the DOL. Rec. Doc. 19. Defendants assert that the U.S. DOL's Wage & Hour Division notified Taylor & Tyler, Inc. of a pending investigation into its wage-payment practices in December 2017, approximately seven months before plaintiff Tyler Archon filed his complaint. *See id.* at 2. Defendant Guillory states, in a sworn declaration, that the scope of the investigation includes wages paid to Plaintiff Tyler Archon and other employees who performed air conditioning repair work. Rec. Doc. 19-2. Mr. Guillory asserts

2

that he has cooperated in the investigation and during his last meeting with the DOL on May 18, 2018, the investigator Adams Goin of the Wage & Hour Division represented he anticipated the investigation would be resolved in the relatively near future. *See id.* at 2. Further, Defendant Guillory asserts that there are currently no outstanding information requests from the DOL. *See id.* Defendants state that Taylor & Tyler, Inc. is a small employer that operates out of a single facility and employs approximately 10-15 individuals at any given time. *See* Rec. Doc. 19-1 at 3.

On June 29, 2018, Defendants executed a tolling agreement with the DOL to toll the statute of limitations with respect to any action under the Fair Labor Standards Act against the Defendants for unpaid minimum wages, unpaid overtime compensation or liquidated damages, and any other applicable statute of limitations, beginning January 3, 2016. Rec. Doc. 19-2. The agreement states that statutes of limitations shall remain tolled until 90 days after notice of termination of the tolling agreement. *See id.*

**LAW AND ANALYSIS**

A district court has inherent authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254. This includes the power of a district court to stay proceedings "in the control of its docket and in the

3

interests of justice." *See In re Beebe*, 56 F.3d 1384 (5th Cir. 1995). The movant for a stay must make out a clear case of hardship or inequity in moving forward if there is even a fair possibility that the stay will harm the other party. *See Landis,* 299 U.S. at 255. When determining whether to stay proceedings, the Court considers: 1) hardship to the moving party if the action proceeds; 2) prejudice to the non-moving party if the stay is granted; and 3)the interests of judicial economy. *See Magana v. Shore Constr., LLC,* No. 17-1896, 2017 WL 2911353, at *3 (E.D. La. July 6, 2017); *E. Cornell Malone Corp. v. Cont'l Cas. Co.*, No. 13-6807, 2015 WL 222334, at *2 (E.D. La. Jan. 14, 2015); *Marine Power Holding, LLC v. Malibu Boats, LLC*, No. 14-2065, 2014 WL 7139643, at *1 (E.D. La. Dec. 15, 2014). The Court will analyze each factor below to determine whether the facts weigh in favor of granting a stay.

The primary jurisdiction doctrine is a doctrine of judicial abstention in which a court with jurisdiction over a matter nevertheless "defers to an administrative agency for an initial decision on questions . . . within the peculiar competence of the agency." *Occidental Chem. Corp. v. La. Pub. Serv. Com'n*, 810 F.3d 299, 309 (5th Cir. 2016). Although each application of the primary jurisdiction doctrine requires a fact-specific inquiry, the Fifth Circuit has identified three factors to consider: 1) whether the Court has original jurisdiction over the claim before it; 2) whether adjudication of the claim requires the resolution of

4

predicate issues or the making of preliminary findings; and 3) whether the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body. *See* Northwinds Abatement, Inc. v. Employers Ins. of Wausau, 69 F.3d 1304, 1311 (5th Cir. 1995). The Court will consider these factors below to determine whether this case properly fits within the unique competency of the DOL.

A.  <u>The three-factor balancing test weighs against granting a stay</u>

Considering the three factors mentioned above: 1) hardship to the moving party, 2) prejudice to the non-moving party, and 3) judicial economy, it is in the public interest to deny the requested stay. Defendants have not made out a clear case of hardship in moving forward in light of the likelihood of prejudice to plaintiff, and judicial economy will not be promoted.

1) *The hardship to the moving party if the action proceeds does not weigh in favor of granting a stay*

Defendants' asserted harm in continuing litigation does not rise to the level warranting a stay. Defendants argue that if a stay is not granted, they will be forced to waste time, money, and resources litigating issues likely to be rendered moot by the DOL's investigation. However, as discussed in further detail below, a resolution of the DOL's investigation does not necessarily mean

5

plaintiff's claims will be moot. Defendants argue that they should not be required to fight this issue "simultaneously on two fronts." *See* Rec. Doc. 19-1 at 2. However, Defendants stated that Mr. Guillory's last in-person with the DOL was on May 18, 2018 and he last submitted documentation on August 26, 2018. *See* Rec. Doc. 19-2 at 2. Defendants noted that "there currently are no outstanding information requests from the DOL." *Id.* This indicates that defendants are not currently expending time or resources on the DOL's investigation, and have not been for at least a few months. Even if Defendants were still providing information to the DOL, a substantial overlap with the present litigation would presumably make engaging in discovery simpler, not more difficult. While the Court recognizes the duties Mr. Guillory has as the sole proprietor of Taylor & Tyler, Inc., defendants have not made a "clear case of hardship or inequity in being required to go forward" in light of the possibility of prejudice to plaintiffs discussed below. *See Landis*, 299 U.S. at 255

 *2) Prejudice to the non-moving party if the stay is granted weigh against granting a stay*

A stay will prejudice plaintiffs who choose not to accept the DOL's proposed settlement and potential plaintiffs for whom the statute of limitations will continue to run. Defendants argue that a stay will not prejudice plaintiff because plaintiff's claims are entirely subsumed by the DOL's investigation, which will provide

6

plaintiffs with complete relief. *See* Rec. Doc. 19-1. However, as plaintiff notes in his response, the DOL's investigation may not provide complete relief as plaintiffs are not required to accept the DOL's calculations of backwages owed by an employer. *See Owens v. Marstek, L.L.C.,* 548 F. App'x 966, 971 (5th Cir. 2013). Rather, an employee may choose to pursue an action in court for violations of the FLSA, and maintain a claim for liquidated damages, attorney's fees, and costs in addition to back wages. *See id.* There is no guarantee that the DOL and defendants will ultimately agree to a settlement, or that such a settlement would be acceptable to plaintiffs. Additionally, defendants cannot predict the duration of the DOL's investigation. Defendants admit that "the DOL has not provided a date certain by which it will complete its investigation." Rec. Doc. 19-1 at 3. The DOL investigator may have represented to defendants in May 2018 that he expected the investigation to conclude in "the relatively near future" but it has now been five months with no new indication of when the investigation will be completed. *See* Rec. Doc. 19-1. Defendants most recently submitted information to the DOL on August 26, 2018. *See* Rec. Doc. 19-2 at 2. This indicates that the fact-finding portion of the investigation was recently ongoing, and defendants have not provided any evidence to show progression past this stage. The Fifth Circuit has noted that while District Courts have general discretionary power to stay proceedings, it is an abuse of this

7

discretion to issue stay orders of an indefinite duration. *See Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). Without any clear deadline for resolution of the DOL's investigation, a stay of this litigation would necessarily be of an indefinite duration.

Defendant argues that plaintiffs are not prejudiced because the tolling greement executed between itself and the DOL preserves all potential claims in case of an unsuccessful settlement. *See* Rec. Doc. 19-3. However, plaintiff argues that the tolling agreement does not cover all potential opt-in plaintiffs, and that the statute of limitations will continue to run. The agreement tolls the statute of limitation for any action under the FLSA against the defendants for unpaid minimum wages, overtime compensation, or liquidated damages beginning January 3, 2016. *See* Rec. Doc. 19-3 at 1. Plaintiff is alleging willful violations of the FLSA's minimum wage and overtime provisions, for which a cause of action must be brought within three years of accrual. 29 U.S.C. § 255(a). Thus, for the potential plaintiffs whose claims accrued before the tolling agreement date of January 3, 2016, the three year statute of limitations will continue to run. This statute of limitations is only tolled once the potential plaintiffs file written consent to join the suit. 29 U.S.C. § 256. A stay would delay conditional certification and therefore notice to potential class members. As plaintiffs note, this would delay potential class

members' opportunity to file written consent and join the case while the statute of limitations would continue to run. *See* Rec. Doc. 25 at 2-3. Defendants argue that plaintiff Tyler Archon's claims are protected by the tolling agreement, as are the claims of the only other individual they are aware of who may fit the defined class. *See* Rec. Doc. 19-1 at 7. However, until notice is provided to potential class members, the Court cannot be certain that all potential plaintiffs, including those of whom Defendants may be unaware, have been provided adequate opportunity to decide whether litigation is their preferred course of action. Therefore, the prejudice to plaintiff if a stay was granted is significant.

3) *The interest of judicial economy does not weigh in favor of granting a stay*

A stay of this case will not promote judicial economy. Defendants argue that the DOL "is essentially exercising the same function as this Court" and can fully resolve the issues set forth in plaintiff's complaint. *See* Rec. Doc. 19-1 at 9. At this stage, it is not clear whether the DOL is exercising a similar function as the Court. Defendants have only described the scope of the DOL's investigation as "include[ing], but[] not limited to, wages paid to Tyler Archon . . . and other employees who performed air conditioning repair work." *See* Rec. Doc. 19-2 at 1. The Tolling Agreement describes the tolling of the statute of limitations as necessary for the DOL "to negotiate with respect to [FLSA] claims

9

and/or causes of action." See Rec. Doc. 19-2 at 4. Based on these generalized descriptions, the Court cannot determine whether the scope of the DOL's investigation covers all of the issues plaintiff raises in his complaint, including allegations of willful violations of the FLSA. Additionally, it is not clear that the outcome of the DOL's investigation and negotiations will be the relief plaintiff seeks from the Court. Furthermore, as mentioned above, for those plaintiffs who are not protected by the Tolling Agreement or who may choose not to accept the DOL's proposed settlement, these proceedings are not duplicative or unnecessary.

Defendants cite to two district court cases as support for the proposition that "a stay during the pendency of an administrative proceeding can be appropriate." Rec. Doc. 19-1 at 5. Those cases do not apply to the issues presented in this case because they involved ongoing administrative *proceedings*. In *Armor All/STO Prods. Co. v. Aero. Communs. Holding Co.* and *V.V.V. & Sons Edible Oils, Ltd. v. Meenakshi Overseas, LLC,* the courts granted a stay pending the outcome of proceedings in front of the Patent Trial and Appeal Board and the Trademark Patent and Appeal Board. *See Armor All/STP Prod. Co. v. Aerospace Commc'ns Holdings Co.*, No. 15-781, 2016 WL 6397269 (E.D. Tex. Oct. 28, 2016); *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*, No. 14-2961, 2016 WL 1268008, (E.D. Cal. Mar. 31, 2016). Unlike the DOL's investigation in this case, those cases involved proceedings by a

specialized adjudicatory body with an administrative judge. The decision to grant a stay pending the outcome of such a hearing is not analogous to the issue before this Court today. Defendants also cite to a number of cases in which they claim courts have "granted stays of judicial proceedings involving parallel and preexisting investigations by the DOL." Rec. Doc. 19-1 at 5. While these cases are not binding precedent for this Court and did not occur within this district, the Court notes that none of these cases are relevant to the issues before the Court. In those cases, a stay was granted because neither party objected to a stay[1], the parties had jointly stipulated to stay discovery[2], or because the court was waiting for the DOL's preliminary determination of whether the statute under which the claim was brought applied to the contract at issue[3]. The conditions present in those cases warranting a stay do not exist in this case, where parties do not consent or stipulate to a stay and there is no question of whether

---

[1] "At oral argument, the parties discussed the possibility of staying the litigation pending further action by the DOL or the IRS that might resolve this matter without the parties incurring unnecessary costs. Neither party objects to such a stay." *Yoshioka v. Charles Schwab Corp.*, No. 11-1625, 2011 WL 6748984, at *14 (N.D. Cal. Dec. 22, 2011)

[2] "In addition, in this case, the court has ordered that plaintiff and defendant stay the proceeding in light of the parties' stipulation, which allows defendant to respond to a DOL investigation into defendant's pay practices." Wilcox v. Alternative Entm't, Inc., No. 09-CV-659-BBC, 2010 WL 691702, at *1 (W.D. Wis. Feb. 25, 2010)

[3] "This case is stayed pending the DOL's determination of whether the SCA applies to the concession contract at issue." Int'l Org. of Masters, Mates & Pilots, Pac. Mar. Region v. Nat'l Park Serv., No. C 06-2107-CW, 2006 WL 1466829, at *7 (N.D. Cal. May 26, 2006)

the FLSA applies to the alleged conduct. Therefore, the factor of judicial economy weighs against granting a stay.

B.  The primary jurisdiction doctrine does not provide adequate grounds for the a stay

The primary jurisdiction doctrine does not apply to plaintiff's claims because FLSA claims for unpaid overtime compensation are not uniquely suited to the competence of the DOL. The factors to consider are: 1) whether the Court has original jurisdiction over the claim before it; 2) whether adjudication of the claim requires the resolution of predicate issues or the making of preliminary findings; and 3) whether the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body. *See Northwinds*, 69 F.3d 1304, 1311 (5th Cir. 1995).

First, the Court has original jurisdiction of plaintiff's claims against defendants for unpaid minimum wages, unpaid overtime compensation, and liquidated damages under the Fair Labor Standards Act.[4] Second, the adjudication of plaintiff's claims does not require the resolution of predicate issues that, three, the legislature has committed to an administrative body. The FLSA

---

[4] "An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b)

authorizes the DOL to supervise the payment of unpaid minimum wages or overtime compensation, but does not make this a prerequisite to an employee's private action. Furthermore, the FLSA specifically states that a private action shall only be terminated "upon the filing of a complaint by the Secretary," indicating that until such a step is taken employees retain their right to proceed with private litigation. 29 U.S.C. § 216 (c). Here, the DOL has not filed a complaint, and went further by specifically agreeing in the Tolling Agreement to refrain from filing any such complaint for the time being.[5] Defendants note that the tolling agreement was executed as an inducement and to allow this suit to proceed would undermine defendants' rationale for executing the tolling agreement. *See* Rec. Doc. 26 at 6. While this may be true, the tolling agreement was only signed by the DOL and the defendants; plaintiff was not a party to this agreement and did not agree to relinquish his rights to bring a direct suit. Defendants argue that the DOL has "specialized expertise relating to the administration of the FLSA and its attendant regulations" and in addressing overtime disputes. Rec. Doc. 19-1 at 9-10. However, "courts in the Eastern District of Louisiana regularly adjudicate FLSA claims." *Magana v. Shore Constr., LLC*, No. 17-1896, 2017 WL 2911353, at *6 (E.D. La. July 6, 2017)(citing *Nieto v. Pizzati*

---

[5] "In exchange for the Secretary's agreement to withhold filing legal proceedings under the FLSA until notice of termination in the manner set forth. . ." Rec. Doc. 19-3 at ¶ 2.

*Enterprs., Inc.*, No. 16-5352, 2016 WL 6962513 (E.D. La. Nov. 29, 2016) (Brown, J.); *Medina v. Brothers Behrman Hwy.*, Inc., No. 13-4831, 2015 WL 3679534 (E.D. La. June 12, 2015) (Vance, J.); *Allen v. Entergy Ops.*, Inc., No. 11-1571, 2016 WL 614687 (E.D. La. Feb. 11, 2016) (Milazzo, J.)). Furthermore, while the statute provides both the DOL and private plaintiffs an avenue forward in resolving FLSA claims – both avenues involve adjudication in a court of law, making it clear that this is not an issue "within the particular competence of [an] agency."

New Orleans, Louisiana, this 16th day of October, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE

14